IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 20-00019 JAO |
| Plaintiff, | CIV. NO. 22-00172 JAO-KJM |
| vs. | |
| SARAH SESEPASARA, aka "Bill Sesepasara," aka "Ronald Sesepasara," | **ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255** |
| Defendant. | |

**ORDER DENYING DEFENDANT'S MOTION
UNDER 28 U.S.C. § 2255**

Defendant Sarah Sesepasara ("Sesepasara") filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Motion"), asking the Court to vacate her conviction based on a claim that defense counsel Gary Singh's performance fell below constitutional standards for effective assistance of counsel.  ECF No. 110.  For the following reasons, the Court DENIES the 2255 Motion.

## I.  BACKGROUND

On February 5, 2020, the Grand Jury returned an Indictment charging Sesepasara with Possession with Intent to Distribute 50 grams or more of

Methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii)
(Count 1), and Possession of Firearm and Ammunition by a Convicted Felon, a
violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 2).  ECF No. 12.  After
the Federal Public Defender's Office withdrew from representing Sesepasara due
to a conflict, Louis Michael Ching was appointed to represent her.  ECF Nos. 20,
26–28.

The Court later set a change of plea hearing upon request of the parties.
ECF No. 30.  Mr. Ching and the Government had negotiated a Memorandum of
Plea Agreement ("the Ching MOPA") that Sesepasara signed.  ECF No. 55-1.
However, before the plea hearing, Mr. Ching was allowed to withdraw from
representing her.  ECF No. 41.  Another attorney was appointed, but that attorney
withdrew for reasons not relevant here.  ECF Nos. 42, 45, 46.  Attorney Gary
Singh was then appointed to represent Sesepasara on October 23, 2020.  ECF No.
48.

After Mr. Singh was appointed, the Government filed a motion in limine,
seeking to introduce the Ching MOPA at trial.  ECF No. 59.  The defense did not
oppose the motion, and the Court granted it.  ECF Nos. 62, 65.

On June 22, 2021, the Government then filed a Special Information as to
Prior Serious Drug Felony ("Special Information") pursuant to 21 U.S.C. § 851.

2

ECF No. 67.  The filing of the Special Information increased the statutory

mandatory minimum Sesepasara faced, from 10 years to 15 years.  *See* 21 U.S.C.

§ 851.

On July 9, 2021, Mr. Singh filed a motion to withdraw as Sesepasara's

attorney.  ECF Nos. 74.  Magistrate Judge Porter denied the motion on July 20,

2021, which at that point was approximately one month prior to trial.  ECF No. 68,

80.

It is undisputed that the Government was made aware that Sesepasara

intended to argue at trial that she possessed the two firearms alleged in the

Indictment in an effort to release the firearms to her boyfriend's counsel, Cynthia

Kagiwada, so that her boyfriend might receive a lower sentence for a pending

federal criminal case.  ECF Nos. 90, 90-1.  It is also undisputed that the

Government was similarly aware that another defense Sesepasara intended to raise

at trial was that she did not possess the 56 grams of methamphetamine the

Government claimed she had; rather, she possessed far less than the 50-gram

minimum amount for mandatory enhanced sentencing under 21 U.S.C.

§ 841(b)(1)(A)(viii).  *See, e.g.*, ECF No. 121-4.  The Government moved in limine

to preclude any argument that the firearms were innocently possessed based on a

theory that Sesepasara intended to surrender them to Ms. Kagiwada.  ECF No. 90.

However, before the Court could rule on that motion, a change of plea hearing was scheduled.  ECF No. 94.

On August 10, 2021, the Court held the change of plea hearing.  ECF No. 95.  In the course of that hearing, however, it became clear that Sesepasara needed more time to consider the plea agreement that Mr. Singh had negotiated ("Singh MOPA"), and so the Court continued the hearing to the following day.  *See id.*; ECF No. 121-1 at 10.  Prior to that point in the plea colloquy, however, Sesepasara acknowledged under oath that:  (1) she was satisfied with Mr. Singh's representation of her, and (2) no one had threatened her or others in order to coerce her to plead guilty.  ECF No. 121-1 at 4, 8.

The following day, the plea colloquy was completed without any interruptions.  Sesepasara — again under oath — acknowledged that the Singh MOPA was made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and that the parties agreed to recommend a 10-year term upon the Government's dismissal of the Special Information at sentencing, which is less than the 15-year mandatory minimum had the Government opted not to dismiss the Special Information.  *See* ECF No. 121-2 at 4–7, 9.

The Singh MOPA included the following stipulated facts.  A cooperating individual ("CI"), under the direction of the Drug Enforcement Administration ("DEA"), called Sesepasara and ordered two pounds of methamphetamine to be

4

delivered to a drug store parking lot. *See* ECF No. 98 at 5. Later that same day, the CI contacted Sesepasara to ask her for her location. *Id*. at 6. Sesepasara told the CI that she was in a white Nissan Maxima near the center median of the parking lot. *Id*. Within minutes, DEA agents approached a white Nissan Maxima in the parking lot; that car was registered to Sesepasara. *Id*. Sesepasara and a fellow passenger were arrested based on probable cause. *Id*. The Nissan was taken to the DEA's office, where it was searched. *Id*. In the car, agents recovered two firearms and over 200 gross grams of methamphetamine. *Id*. Sesepasara waived her *Miranda* rights and acknowledged that she had driven to the parking lot to deliver a half-ounce of methamphetamine (although the Government believed that the amount was in fact two ounces). *Id*. She also admitted to possessing the weapons, but stated that she had intended to release them to her boyfriend's attorney with the hope that he would get a reduced sentence. *Id*. She acknowledged that she possessed the 56 net grams of methamphetamine recovered from the car with the intent to distribute it to the CI. *Id*. at 7. The facts contained in the Singh MOPA were generally the same as those in the Ching MOPA. *Compare* ECF No. 98 at 5–7, *with* ECF No. 55-1 at 6–8.

At sentencing, the Court adopted the parties' joint recommendation, sentenced Sesepasara to 120 months' imprisonment, and granted the Government's motion to dismiss the Special Information. ECF No. 106.

On April 15, 2022, Sesepasara filed the 2255 Motion, which was followed by a Memorandum in Support on May 27, 2022.  ECF Nos. 110, 117.  The Government filed its Opposition on June 17, 2022, ECF No. 121, and Sesepasara filed a Reply on June 29, 2022.  ECF No. 123.  During the pendency of the 2255 Motion, Sesepasara had a subpoena served on the Government, ECF No. 118-1, the Government moved to quash it, ECF No. 118, and the Court granted the Government's motion.  ECF No. 119.

## II.  LEGAL STANDARDS

A.    Ineffective Assistance Of Counsel

Title 28, United States Code, Section 2255 allows for prisoners to seek relief from their convictions and sentences where, among other things, such convictions and sentences violate the Constitution:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

The Sixth Amendment right to counsel "applies to all critical stages of the prosecution," including guilty pleas and a defendant's effort to cooperate with the government.  *United States v. Leonti*, 326 F.3d 1111, 1116–17 (9th Cir. 2003)

(internal quotation marks, brackets, and citations omitted); *see Padilla v. Kentucky*, 559 U.S. 356, 364 (2010).  When evaluating an ineffective assistance of counsel claim, courts must confront two questions:  (1) whether counsel's performance was actually deficient and, if so, (2) whether the defendant suffered prejudice due to that deficiency.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficiency is measured by whether the attorney's conduct "fell below an objective standard of reasonableness."  *Id*. at 688.  In assessing prejudice, the Court must consider whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

B.     Evidentiary Hearing

A movant is entitled to an evidentiary hearing pursuant to 28 U.S.C. § 2255 "[u]nless the motion and the files and records of the case conclusively show that [she] is entitled to no relief."  28 U.S.C. § 2255(b).  The Ninth Circuit has explained that an evidentiary hearing is required when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted."  *Leonti*, 326 F.3d at 1116 (internal quotation marks and citation omitted).  The Court must therefore take the allegations as true for purposes of determining whether to hold an evidentiary hearing, but assess whether the movant's contentions "when viewed against the record, do not state a claim for relief or are

so palpably incredible or patently frivolous as to warrant summary dismissal." *Id.* (internal quotation marks and citation omitted).

Here, even taking all of Sesepasara's claims as true, an evaluation of those claims in the context of the record reveals that she cannot state a claim on which relief could be granted, so an evidentiary hearing is unwarranted.

## III.  DISCUSSION

Sesepasara raises three grounds in the 2255 Motion, and each ground contains sub-parts.  In Ground One, she asserts that Mr. Singh refused to pursue evidence and file motions that she had requested.  More specifically, she contends that he did not:  (1) obtain chain of custody information, (2) file a motion to suppress based on an unconstitutional search of her vehicle, and (3) address certain unnamed issues with Sesepasara's Presentence Report.  ECF No. 110 at 4.  In Ground Two, she alleges that she attempted to cooperate with the Government, but Mr. Singh thwarted that effort by failing to inform the prosecution of:  (1) her contention that she possessed the firearms in an effort to release them to authorities in order to assist her boyfriend's cooperation with the Government, and (2) her knowledge of information related to a stolen rocket launcher.  *Id.* at 5.  In Ground Three, Sesepasara contends that Mr. Singh pressured her to plead guilty by refusing to pursue her defense that she did not possess the amount of drugs alleged, threatening her that her family would face charges if she did not plead guilty, and

inaccurately informing her that the guilty plea to Count 2 (Felon in Possession of Firearms and Ammunition) would not affect her sentence. *Id*. at 7.

A.    Ground One:  Mr. Singh's Refusal To Pursue Evidence And Submit Motions

1.    The Chain Of Custody Evidence

The information Sesepasara proffers regarding her contention that Mr. Singh refused to pursue chain of custody evidence is that she "asked Mr. Singh to obtain information regarding the chain of custody.  [She] only requested basic information that [she] was sure to aid in her defense.  Mr. Singh refused to ask the prosecution."  ECF No. 110 at 4.   Sesepasara further supports this with a statement that, due to her belief that the Government had incorrectly alleged the amount of drugs recovered from her vehicle, she was "prompted . . . to question the chain of custody of the drugs and request a trial."  ECF No. 117 at 2.  The Government counters with a declaration from Mr. Singh, indicating that he has "no recollection" of Sesepasara's request, and was aware that the Federal Public Defender's Office had the chain of custody discovery, which he presumed was shared with Sesepasara.  ECF No. 121-3 at 1–2.  Further, Assistant United States Attorney Marshall Silverberg attests to the fact that, after learning of Sesepasara's claim regarding the drug amount, *see* ECF 121-4 at 2, he personally went to the Drug Enforcement Administration's (DEA) office, examined the drugs, and watched as agents weighed the drugs recovered from Sesepasara's vehicle.  *Id*. at

2.  That effort established that the drugs did not weigh 14 grams as Sesepasara claims; rather, they weighed more than the 50 grams alleged in the Indictment.  *See id.* at 2–3; ECF Nos. 121-6 to 121-9.  He supplied Mr. Singh with this information. ECF No. 121-4 at 3.

Even assuming Sesepasara is correct in alleging that Mr. Singh refused to ask the prosecution for chain of custody evidence, that does not mean that Mr. Singh dismissed her thoughts on the matter.  To the contrary, Mr. Singh explained the issue to AUSA Silverberg, who then took action to confirm the drug weight in person, and dispel the concern that Sesepasara raised.  *See id.* at 2–3.  Nothing, then, suggests that Mr. Singh's behavior fell below the standard of reasonable representation in this regard.  And even assuming any ineffectiveness, Sesepasara has not shown how a failure to ask for chain of custody evidence prejudiced her.

2.     The Failure To File A Motion To Suppress

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious[.]"  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Indeed, filing frivolous motions to suppress can be detrimental to a defendant:

> A lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law.  Also, the premise that the defendant has nothing to lose by such a motion is false.  The defendant stands to lose two things

> of value — a significant quantity of his lawyer's scarce time, and some of his lawyer's credibility with the judge.  Lawyers are not called "counsel" for nothing.  The judge is counseled by the lawyers as to how he should proceed.  The attentiveness with which the judge listens to the lawyers' advice is tempered by his judgment about the credibility of the particular lawyer.  An unmeritorious motion to suppress may cost the particular defendant some deference by the judge to his lawyer's advice on other issues later in the case.  It will certainly cost the particular defendant the time his lawyer wastes in the library and at his desk generating valueless paper, when he could be working on better motions, interviewing witnesses, examining locations and evidence, researching likely evidentiary issues, and preparing for trial.

*Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).  Moreover, as would have likely happened in this case, the filing of a frivolous motion to suppress can result in a less favorable plea negotiation.  *See* ECF No. 121-4 at 1.

The motion to suppress that Sesepasara claims Mr. Singh should have filed would have indeed been frivolous because "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband," *United States v. Ross*, 456 U.S. 798, 823 (1982), and there was ample probable cause here.  The facts as stipulated to in the Singh MOPA indicated that a CI, under the direction of the DEA, ordered two pounds of methamphetamine via a telephone call to Sesepasara; the CI and Sesepasara agreed to meet in a drug store parking lot; Sesepasara told the CI that she was driving a white Nissan Maxima and was by the center median of the parking lot; that Maxima was registered to Sesepasara; Sesepasara was arrested out

11

of the Maxima and based on probable cause.  *See* ECF No. 98 at 5–7.  These are

indeed the sort of facts that allow for a warrantless search of a vehicle based on

probable cause.  *See*, *e.g.*, *United States v. Sarabia*, 446 F. App'x 48, 49 (9th Cir.

2011) (concluding sufficient probable cause existed for search of suspect's vehicle

where reliable confidential informant made monitored drug-related phone call to

suspect); *United States v. Faagai*, 869 F.3d 1145, 1150–51 (9th Cir. 2017)

(affirming district court's denial of motion to suppress as there was probable cause

to search defendant's truck based on totality of circumstances, which included

intercepted phone calls and texts in coded language suggesting defendant was

purchasing drugs from a known drug dealer, defendant was seen meeting with that

drug dealer in parking lot, defendant was then seen driving away from suspected

drug deal).  So, filing a motion to suppress would have been fruitless and even

arguably detrimental to Sesepasara.  Mr. Singh's refusal to file the motion was not

only within the constitutional standards for adequate representation; it was also

likely a wise move.

   3.  Failure To Address Presentence Report

  Sesepasara does not outline what facts in the PSR were problematic and

warranted objections from Mr. Singh.  The Court therefore will not consider her

argument that Mr. Singh was ineffective for failing to raise unknown objections.

Moreover, given that the Court accepted the Rule 11(c)(1)(C) plea, it is even less

clear how Sesepasara was prejudiced by any of Mr. Singh's refusals to object to anything in the PSR.

B.   Ground Two:  Sesepasara's Efforts To Cooperate With The Government

      1.   Mr. Singh's Failure To Address Sesepasara's Reason For Possessing The Guns

Sesepasara characterizes as ineffective Mr. Singh's failure to "address[] with the prosecutor, nor any other relevant authorities" her claim that the firearms she possessed "belonged to [her] boyfriend and were to be turned in to prosecutor Marshall Silverberg."  ECF No. 110 at 5.

The undisputed facts show, however, that Mr. Silverberg was well aware of Sesepasara's position regarding the firearms because he filed a motion in limine seeking to preclude argument that Sesepasara legally possessed them in an effort to further her boyfriend's cooperation with the Government.  *See* ECF No. 90.  In fact, in April 2021 AUSA Silverberg went so far as to interview Sesepasara's boyfriend's attorney, Ms. Kagiwada, who reported that she had *never* told Sesepasara to obtain firearms, and in fact told her not to get them personally.  *See* ECF No. 90-4.

In other words, what Sesepasara asked Mr. Singh to do was done, and so her claim that Mr. Singh was ineffective as to this contention fails.

2.  Mr. Singh's Failure To Facilitate An Interview Of Sesepasara
     Regarding A Stolen Rocket Launcher

Although not clear, Sesepasara next appears to argue that Mr. Singh should

have arranged for an interview of Sesepasara so that she could inform the

Government of her knowledge about a rocket launcher.  Specifically, Sesepasara

states:

> The Movant also told Mr. Singh that the origin of the weapons
> was also the source of a rocket launcher (surface to air missile
> launcher) that was stolen from Kaneohe Marine Base.  *This
> rocket launcher is (or was) already in the government's
> possession.*
>
> *To the Movant's knowledge, this was never addressed with
> the prosecutor, nor any other relevant authorities.*  The Movant
> witnessed the transaction for the rocket launcher and could
> provide valuable information to the government.  However, Mr.
> Singh refused to pursue this cooperation at the expense of the
> Movant.

ECF No. 110 at 5 (emphasis added).  In a later memorandum, Sesepasara

submitted more detailed facts regarding her interactions with her boyfriend's

attorney and the person who she claims had the rocket launcher:

> In January 2020, the Defendant's [Sesepasara's] boyfriend
> (Aaron Sasaki) had been arrested and was cooperating with the
> United States Attorney (his prosecutor) in concert with his
> attorney, Cynthia Kagiwada.  *Cynthia Kagiwada contacted the
> Defendant and instructed her to pick up a rocket launcher(s) and
> guns in order to aid Aaron Sasaki in his attempt to cooperate
> with the United States Attorney's office.*  The Defendant did as
> Cynthia Kagiwada directed by picking up her boyfriend's guns
> and placing them in her vehicle (2014 Nissan Altima).  2 days
> later, Cynthia Kagiwada spoke to the Defendant via cell phone

14

when the Defendant and the individual (INDIV) that had the rocket launcher were in the parking lot at Pali Long's, just a few blocks from Cynthia Kagiwada's office. *Cynthia Kagiwada told the Defendant that she was working with the DEA (not the ATF) and the prosecutor and that the Defendant needed to keep the weaponry until it was to be turned over.* The INDIV was on speaker phone with the Defendant during the call and was "spooked". He removed the rocket launcher from the vehicle and left the guns in the Defendant's Altima. The Defendant waited for two weeks for Cynthia Kagiwada to instruct her. The Defendant was arrested after this period of time in a parking lot at Pali Long's with 14 grams of methamphetamine in her vehicle.

During the process of the Defendant's prosecution, the Defendant asked her attorneys (Louis Ching and Gary Singh) to obtain testimony from Cynthia Kagiwada regarding the arrangement that was made with the weaponry and the United States Attorney's office. . . . Both attorneys told the Defendant that United States Attorney Marshall Silverberg was aware of the rocket launchers and the Government's attempts to acquire the stolen weapons.

ECF No. 117 at 1–2 (emphases added).

Mr. Singh reports that Sesepasara did not offer him much detail regarding the rocket launcher, if she even discussed it with him at all. *See* ECF No. 121-3 at 3. And, in any event, AUSA Silverberg was at least aware that Sesepasara's boyfriend had some alleged knowledge about rocket launchers at the time he interviewed Ms. Kagiwada. *See* ECF No. 90-4. Perhaps most significantly, Ms. Kagiwada informed the Government that her client was indeed attempting to obtain rocket launchers, but that the Government had specifically instructed "that only government agents would be able to pick up the rocket launchers," and that

Mr. Sasaki was only to obtain information regarding the location of the launchers. ECF No. 90-4 at 1. Ms. Kagiwada relayed this same information to Sesepasara. *See id.* AUSA Silverberg also had no information from his office corroborating Sesepasara's claim that a rocket launcher had been stolen from the "Kaneohe Marine Base." *See* ECF No. 121-4.

While caselaw advises that the Court consider Sesepasara's factual claims as true, it also allows the Court to dismiss such claims without a hearing where such statements, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Leonti*, 326 F.3d at 1116 (internal quotation marks and citation omitted). Here, Sesepasara's allegations about what Ms. Kagiwada instructed her to do with the rocket launchers are "palpably incredible." It makes no sense that an attorney would instruct her client's girlfriend to obtain and hold onto a rocket launcher, particularly where the Government made clear to the attorney that the only way any cooperation benefit could result would be where the Government itself received location information about such a seriously dangerous weapon. And Ms. Kagiwada's interview with law enforcement completely contradicts Sesepasara's recitation of events. The Court is satisfied that the palpably incredible nature of Sesepasara's version of what happened with regard to her attempt at cooperation allows it to disregard that version without a hearing.

In *Leonti*, the Ninth Circuit held that the district court erred when not holding an evidentiary hearing to determine the viability of an ineffective assistance of counsel claim in a Section 2255 petition where the defendant, David Leonti ("Leonti"), alleged his lawyer did not support his efforts to cooperate.  That case offers guidance here because its facts are markedly different.  There, the Government was interested in Leonti's cooperation, had arranged for proffers at which counsel did not appear, counsel incorrectly assured the defendant that he would testify in a grand jury proceeding, and "never did *anything* to make it more likely that Leonti would in fact be able to provide substantial assistance." *Id.* at 1121.  And the Government believed Leonti had a lot to offer because it asked for his release on bail in order to facilitate his cooperation, assuring the district court that Leonti had already offered much information. *See id*. at 1115.  In contrast, here, the Government had no serious interest in Sesepasara's claims, and indeed, its interview of Ms. Kagiwada confirmed why.

In any event, the core of Sesepasara's complaint appears to be that Mr. Singh did nothing to facilitate her cooperation.  But that cooperation was clearly at a dead end before it started, and Mr. Singh's treatment of the rocket launcher information did not fall below the constitutional guarantees of assistance of counsel.  And in her Reply, Sesepasara states for the first time that Mr. Singh "also asked the Defendant to obtain the rocket launcher(s) while she was incarcerated."

ECF No. 123 at 3.  Even assuming this is true, this directly contradicts Sesepasara's allegation that Mr. Singh was uninterested in pursuing her cooperation regarding the rocket launchers.

C.      Ground Three:  Mr. Singh's Pressuring Sesepasara To Plead Guilty

        Finally, Sesepasara argues that Mr. Singh pressured her to enter a guilty plea in three ways, each of which is more fully described below.  The Court begins the analysis here with the tenet that, in order to be valid, a guilty plea must be voluntary and intelligent.  *See Bousley v. United States*, 523 U.S. 614, 618 (1998). In other words, it must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (internal quotation marks and other citation omitted)).  Moreover, a district court does not abuse its discretion in declining to hold an evidentiary hearing regarding whether a defendant was pressured by counsel to plead guilty where, as here, "the record includes the transcript of [the] Rule 11 plea colloquy, [the defendant's] signed written plea agreement, and declarations filed by his attorney."  *Kingsbury v. United States*, 783 F. App'x 680, 683 (9th Cir. 2019).

        1.      Mr. Singh's Alleged Refusal To Pursue Sesepasara's Defense

        Sesepasara contends that Mr. Singh refused to pursue the defense that she possessed 14 grams of methamphetamine rather than 56 grams, and informed her

that she would have to file a pro se motion in the event she wished to maintain such a defense.  ECF No. 110 at 7.  She claims that in so doing, he pressured her to enter a guilty plea.

It is not clear precisely what sort of motion would be filed in order to sustain Sesepasara's defense.  Rather, the question of the weight of drugs possessed is better answered at a trial.  So, the fact that Mr. Singh told Sesepasara that she would have to file any related motion pro se was not an unreasonable stance.  And her claim that he "refused to pursue this line of defense" is belied by the efforts AUSA Silverberg took to weigh the drugs.

Moreover, when asked during the plea colloquy whether she was "pleading guilty of [her] own free will," Sesepasara answered, "Yes."  ECF No. 121-1 at 8.  Indeed, the Singh MOPA indicated that Sesepasara was "enter[ing] *voluntary pleas of guilty* to Count 1 and Count 2 of the Indictment."  ECF No. 98 at 3 (emphasis added).  The Court is to "give substantial weight to [a defendant]'s in-court statements" in this context.  *Kaczynski*, 239 F.3d at 1115 (internal quotation marks and citation omitted).  Doing so here means that Sesepasara's claim that Mr. Singh unconstitutionally pressured her to enter a guilty plea fails.

2.     Mr. Singh's Alleged Threat That Sesepasara's Family Would Be Prosecuted If She Did Not Plead Guilty

Sesepasara next contends that Mr. Singh threatened her that her family would face charges if she did not plead guilty.  *See* ECF No. 110 at 7.  The

19

problem with this contention is that, during the plea hearing, Sesepasara testified

under oath that no one had threatened her or anyone else in order to get her to

plead guilty. *See* ECF No. 121-1 at 8. Moreover, Mr. Singh adamantly denies

making such a threat. *See* ECF No. 121-3 at 4. And so her claim fails. *See*

*Kingsbury*, 783 F. App'x at 683 (affirming denial of Section 2255 petition where

defendant's allegations of coercion were contradicted by statement during plea

hearing "that he had not been threatened or coerced in entering the plea").

> 3.   Mr. Singh's Alleged Misstatement That The Guilty Plea To Count 2 (Felon In Possession of Firearms And Ammunition) Would Not Affect Sesepasara's Sentence

Finally, Sesepasara contends that Mr. Singh led her astray by telling her that

a guilty plea to the Felon in Possession count (Count 2) "would not ultimately

effect [sic] the time she served." ECF No. 110 at 7. Mr. Singh's declaration

indicates that he "may had [sic] told the defendant that the conviction of the

firearms count . . . would not have an effect on her sentence because her sentence

was a stipulated one" and that "[his] advice would have been very different if this .

. . plea agreement did not come with such a stipulated sentence." ECF No. 121-3

at 4. In her Reply, Sesepasara more thoroughly argues that she "was improperly

told that a gun conviction would not effect [sic] her, but the Bureau of Prisons lists

the conviction as a violent crime and deprives the Defendant of 18 U.S.C. 3621

eligibility upon completion of RDAP (which was Court Ordered) and First Step

Act Programming."  ECF No. 123 at 6.

An attorney's "inaccurate prediction of what sentence [a defendant] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome . . . and thus does not constitute ineffective assistance of counsel."  *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (citation omitted).  Moreover, in order to prove prejudice under *Strickland*, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Another district court in the Ninth Circuit that addressed a similar argument denied the defendant's habeas petition.  In *United States v. Dillon*, Case No. 2:03-CR-005770KJD-RJJ, 2010 WL 3885354 (D. Nev. Sept. 30, 2010), the defendant contended that his attorney had advised him that he would receive a one-year sentence reduction for participating in the Bureau of Prisons' ("BOP") Residential Drug Abuse Treatment Program ("RDAP").  The court concluded that counsel's performance was not unconstitutionally deficient because:  (1) nothing in the plea agreement asserted a promise that the defendant would receive a sentence reduction for RDAP participation, (2) the defendant could not show a reasonable probability that he would have prevailed at trial, and (3) in light of the 84-month sentence imposed, even a 12-month "mistake" as to the length of the sentence did

not amount to a gross mischaracterization of the likely sentence outcome.  *Id*. at

*2.  *C.f. Williams v. United States*, Case No. 8:17-cv-1869-T-27AEP, 2020 WL

758176, at *7 & n.8 (M.D. Fla. Feb. 14, 2020) ("To the extent that the BOP's

determination that [the defendant] was ineligible for a sentence reduction [for

RDAP participation] constitutes a 'collateral consequence' of his guilty plea, and

counsel's representations constitute 'affirmative misadvice,' the *possibility* of a

reduction of up to one year is not a 'consideration . . . so important that

misinformation from counsel may render the guilty plea constitutionally

uninformed.'" (emphasis added) (citation omitted)).  The Court is persuaded that

the same logic applies here.

First, nothing in the plea agreement suggested that Sesepasara would receive

any sentence other than the stipulated 120 months.  Second, Sesepasara's

likelihood of prevailing at trial was miniscule, particularly considering the Court's

order allowing the Government to present evidence of the Ching MOPA at trial.

Third, any credit that Sesepasara might have received for RDAP[1] had she not

pleaded guilty to Count 2 would have been minimal enough that Mr. Singh's

statements regarding the effects of such a guilty plea did not amount to a gross

---

[1]  Although "[a]n inmate may receive incentives for his or her satisfactory
participation in the RDAP," including "[e]arly release, if eligible," 28 C.F.R. §
550.54(a)(1)(iv), not to exceed 12 months, *see* 28 C.F.R. § 550.55(a), the Bureau
of Prison's Drug Abuse Program Coordinator retains the discretion to place
inmates in RDAP and to remove them.  *See* 28 C.F.R. § 550.53.

mischaracterization.  Finally, the Court is not persuaded that Sesepasara would have proceeded to trial if she had known that she would not be eligible for RDAP by pleading guilty to Count 2:  indeed, she benefitted from a five-year reduction in the mandatory minimum term by pleading guilty as outlined in the Singh MOPA. *See United States v. Ramirez-Hernandez*, No. 5:08–CR–112–KKC, 2012 WL 1940681, at *7 (E.D. Ky Apr. 16, 2012) ("[Defendant] got a deal that spared him the mandatory minimum and resulted in a sentence four years below that ten year floor.  To think he would have elected to go to trial, facing that penalty, over not getting RDAP and the *chance* to shave one year from any term simply does not qualify as 'rational' under the cases." (emphasis added) (citations omitted)); *c.f. Doganiere*, 914 F.2d at 168 (concluding defendant failed to show prejudice under *Strickland* as he "does not allege that had his attorney informed him of the parole consequences of his guilty plea, he would have pleaded not guilty and insisted on going to trial" (citation omitted)); *Flynn v. United States*, No. 2:10–cv–973, 2011 WL 6339784, at *6 (D. Utah Dec. 19, 2011) ("There is no evidence in the record that RDAP was the driving force behind [defense] counsel's recommendation that [the defendant] accept the [Rule 11(c)(1)(C)] plea agreement.  Instead, the recommendation was based on . . . avoiding a ten-year minimum mandatory sentence.").

Sesepasara has not met her burden here.  The 2255 Motion is denied.

D.      Certificate Of Appealability

Sesepasara cannot appeal this Order to the Ninth Circuit without first receiving a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c)(1)(B).  This Court may enter a certificate of appealability only where a petitioner shows "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further."  *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc) (internal quotation marks and footnote omitted), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011). This "requires something more than the absence of frivolity, but something less than a merits determination."  *Id*. (internal quotation marks omitted).

The Court denies a Certificate of Appealability.  It finds that its resolution of all of the grounds raised in the 2255 Motion is not debatable by reasonable jurists.

## IV.  CONCLUSION

For the foregoing reasons, the 2255 Motion is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, August 18, 2022.



Jill A. Otake
United States District Judge

CR 20-00019 JAO, CV 22-00172 JAO-KJM, *United States v. Sesepasara*; Order  Denying Defendant's Motion under 28 U.S.C. § 2255